United States District Court
Southern District of Texas
**ENTERED**
February 15, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| HOUSTON PRIME INVESTMENTS, LTD, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-CV-0996 |
| | § | |
| COMMUNITY LOAN SERVICING, LLC, | § | |
| *Defendant*. | § | |

### <u>MEMORANDUM AND RECOMMENDATION</u>

Plaintiff Houston Prime Investment LTD (HPI) initiated this case by filing a Petition in state court on February 27, 2023 to stop Defendant Community Loan Servicing, LLC (CLS) from foreclosing on property located at 8301 & 8303 Gulf Freeway, Houston, TX 77017.  ECF 1-5.  Defendant removed the case to this federal court based on diversity jurisdiction.  ECF 1 at 3-4.  The matter is now before the Court on Plaintiff HPI's "Rule 56 Motion for Summary Judgment as to Defendant's Zombie Loan/Counterclaim" (ECF 13, as supplemented by ECF 35), and Defendant CLS's "Motion for Summary Judgment and Brief in Support" (ECF 16).[1]  Having considered the parties' submissions and the law, the Court recommends that HPI's Motion for Summary Judgment be granted in part and denied in part and CLS's

---

[1] The District Court referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  ECF 18.

Motion for Summary Judgment be denied in part and granted in part. The issue of attorney's fees also remains pending.

## I.      Background

The following material facts are undisputed. In January 2004, Houston Prime Investments, LTD. (HPI) took out a $500,000 loan from Southwest Guaranty, Ltd. (the Loan) secured by property located at 8301 & 8303 Gulf Freeway, Houston, TX 77017 (the Property). ECF 13-5; ECF 13-6. On February 18, 2004, Southwest Guaranty, Ltd. assigned the Note and Deed of Trust to Bayview Financial Trading Group, L.P. (BFTG). ECF 16-4. HPI stopped making payments on the Loan when it matured on February 1, 2014, at which time the principal balance was $356,951.31. ECF 13-6. M&T Bank sent HPI multiple statements from 2018-2022 noting that the mortgage had matured and the loan balance was due and payable. ECF 13-11. On January 8, 2020, M&T Bank sent HPI a Notice of Default. ECF 16-6. However, no entity attempted to foreclose or otherwise collect on the debt until *after* BFTG assigned the Deed of Trust to Defendant CLS on December 22, 2022. ECF 16-4.

On February 14, 2023, CLS sent HPI a Notice of Maturity/Acceleration and a Notice of Substitute Trustee Sale. ECF 16-7; ECF 13-7; ECF 13-8. On February 27, 2023, HPI filed a Petition in state court to stop the scheduled March 7, 2023 foreclosure sale of the Property. ECF 1-5. HPI's Original Petition asserted claims

for declaratory judgment, breach of contract, fraud, violation of the Texas Property Code, and violation of the Texas Debt Collection Act, and sought actual damages, exemplary damages, and attorney's fees, on grounds that collection of the "Zombie loan" was unlawful because the four-year statute of limitations for collection of a debt under Texas law had expired and the lien represented by the deed of trust was void. ECF 1-5; ECF 13-9. The Texas court granted Plaintiff's application for a TRO and stayed the foreclosure sale. ECF 13-4.

HPI filed a Second Amended Petition on March 13, 2023 dropping some causes of action and asserting claims for permanent injunctive relief preventing foreclosure, declaratory judgment that CLS has no right to collect the debt or to foreclose, and seeking recovery of "damages, penalties, attorney's fees, costs, and expenses." ECF 1-18. On March 17, 2023, Defendants filed an Answer and Counterclaim in state court and on the same day removed the case to this federal court based on diversity jurisdiction. ECF 1-20; ECF 1. On April 7, 2023, CLS filed an Amended Counterclaim in federal court asserting claims for breach of contract, a judgment authorizing non-judicial or judicial foreclosure, and equitable subrogation. ECF 5. HPI filed an Answer and an Amended Answer asserting multiple affirmative defenses to CLS's Counterclaims. ECF 12; ECF 34. The parties promptly filed cross-motions for summary judgment, which have been fully

briefed and are ripe for determination.  *See* ECF 13, 16, 22, 23, 24, 25, 26, 35, 37, 38.

## II.    Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).   Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).  "An issue is material if its resolution could affect the outcome of the action."  *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).  If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013).  In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the

most reasonable inference to be drawn from the evidence." *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987).   However, "[c]onclus[ory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citation omitted).

## III.   Evidentiary Objections

Before addressing the merits of the cross-motions, the Court first considers the parties' objections to the summary judgment evidence.  ECF 22; ECF 25; ECF 26.   The material facts of this case are undisputed, rendering the evidentiary objections essentially meaningless.   HPI objects to the Declaration of Kevin Jonas, (ECF 16-1), which authenticates the Loan documents and default notices submitted by CLS as business records.   ECF 22.   Some of the documents attached to the Jonas Declaration are also relied upon by HPI.   Thus, HPI's objections to the Jonas Declaration are overruled.

HPI also objects to the Declaration of Marc D. Cabrera, (ECF 16-8), regarding attorney's fees.   *Id.*   These objections are overruled as moot because the Court is not recommending judgment on attorney's fees at this time and does not rely on the Cabrera Declaration.

CLS objects to the second Affidavit of Amir Banjalou[2] (ECF 23-1), arguing the Affidavit contains speculation and asserts new claims that HPI did not plead in the Second Amended Petition.  ECF 25.  The Court has not relied on the second Banjalou Affidavit in making its recommendation and therefore overrules the objections as moot.

## IV.    Analysis of Cross Motions for Summary Judgment

The parties have filed cross-motions for summary judgment which, for the most part, are negative images of each other.  *Compare* ECF 13 *with* ECF 16.  Because the timeliness issue is a matter of law and does not involve factual disputes, the Court addresses the motions jointly on that issue.  The allocation of burden of proof is considered in the Court's analysis of the counterclaims for breach of the Note and Equitable Subrogation.

HPI argues it is entitled to summary judgment on all claims in this case because foreclosure is untimely under Texas Finance Code § 392.307(c) and Texas Civil Practices and Remedies Code §§ 16.004 and 16.035, all of which establish a four-year limitations period for actions to collect on a debt and foreclose.  ECF 13; ECF 23; ECF 35; ECF 38.  HPI also argues that the savings clause of Texas Civil Practices and Remedies Code § 16.069 does not apply to revive the statute of

---

[2] Banjalou submitted an Affidavit in connection with HPI's Motion for Summary Judgment.  ECF 13-6.  CLS has not objected to the first Banjalou Affidavit.

limitations on CLS's counterclaims. *Id.* Further, HPI argues that: CLS lacks standing because there is no evidence that CLS is the holder of the Note; CLS cannot prove the elements of its equitable subrogation claim; and fact issues on HPI's affirmative defenses to CLS's counterclaims preclude summary judgment for CLS. *Id.*

In turn, CLS takes the position that even though it filed counterclaims for foreclosure and breach of contract more than nine years after the Note matured, the counterclaims are timely under the counterclaim savings clause set forth in Texas Civil Practices and Remedies Code § 16.069. ECF 16; ECF 24; ECF 25; ECF 37. CLS therefore seeks summary judgment on its claims for foreclosure and breach of the Note and further contends that it is entitled to equitable subrogation for repayment of approximately $60,000 in insurance premiums and $170,000 in property taxes it has paid on the property since 2014. *Id.*

**A.   The record clearly demonstrates that CLS's counterclaims for foreclosure and breach of Note accrued on February 1, 2014, and the four-year statute of limitations for foreclosure and six-year statute of limitations for breach of the Note have expired.**

**1.  The foreclosure and breach of Note causes of action accrued on February 1, 2014.**

The date on which a cause of action accrues is a question of law. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001). An action for foreclosure and breach of the Note and Deed of Trust accrues on the maturity date

the loan. *Castillo v. Branch Banking & Tr. Co.*, No. 05-19-00854-CV, 2020 WL 1983361, at *4 (Tex. App.—Dallas Apr. 27, 2020, pet. denied) (holding that a cause of action for foreclosure "accrues—and limitations commences—on the maturity date of the final installment or when the holder exercises its option to accelerate); *Thompson v. Yellowfin Loan Servicing Corp.*, No. 01-21-00147-CV, 2023 WL 17492, at *7 (Tex. App.—Houston [1st Dist.] Jan. 3, 2023, no pet.) (holding that a cause of action for enforcement of a note accrues upon maturity or acceleration). The parties also do not dispute that the loan matured on February 1, 2014 and HPI failed to make the required balloon payment required upon maturation.  ECF 13 at 3; ECF 16 at 9.  Thus, as to CLS's claims for foreclosure and breach of the Note accrued, and the respective statutes of limitations began to run, on February 1, 2014.

## 2. The statute of limitations to foreclose expired four years after the cause of action accrued.

Under Texas law, the statute of limitations for a foreclosure action expires 4 years after the cause of action accrues.  TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3) (a person must bring suit on a debt no later than four years after the day the cause of action accrues); TEX. CIV. PRAC. & REM. CODE § 16.035(b) ("A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues."). Thus, in this case, the statute of limitations for CLS's foreclosure action expired in February 2018.

### 3.  The statute of limitations to sue for breach of the Note expired six years after the cause of action accrued.

The six-year statute of limitations of the Texas Business and Commerce Code § 3.118 applies to an action to enforce a promissory note rather than the four-year statute of limitations in the Texas Civil Practices and Remedies code for foreclosure on property.[3] *Aguero v. Ramirez*, 70 S.W.3d 372, 375 (Tex. App.—Corpus Christi-Edinburg 2002, pet. denied) (holding that an action to sue only on the debt, not foreclose on the lien, is governed by § 3.118); *Smith v. Yellowfin Loan Servicing Corp.*, No. 05-21-00306-CV, 2023 WL 2596070, at *7 (Tex. App.—Dallas Mar. 22, 2023, no pet.) (applying the six-year statute of limitations to an action on a note). Thus, the statute of limitations for CLS's claim for breach of the Note expired in February 2020.

### B. Texas Civil Practice & Remedies Code § 16.069 revives the statute of limitations on CLS's counterclaims.

CLS first filed its counterclaims on March 17, 2023, more than nine years after the causes of action accrued, more than three years after the statute of limitations for breach of the Note expired, and more than five years after the statute of limitations for foreclosure expired.  CLS argues that the statute of limitations on its counterclaims has not expired because Texas Civil Practice & Remedies Code

---

[3] CLS's breach of contract claim to enforce the Note is untimely under either statute in this case in which maturity and default occurred in February 2014, absent application of § 16.069.

9

§ 16.069 "operates to preserve, revive, and/or extend any purported expiration of the statute of limitations to foreclose."[4] ECF 16 at 7.

Section 16.069 reads in full:

(a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

(b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

"The intention of [§ 16.069] is to prevent a plaintiff from waiting until an adversary's valid claim arising from the same transaction is barred by limitations before asserting his own claim." *Ball v. SBC Commc'ns, Inc.,* No. 04-02-00702-CV, 2003 WL 21467219, at *2 (Tex. App.—San Antonio June 25, 2003, pet. denied).

HPI argues that § 16.069 does not apply because HPI did not wait to assert a claim until its "adversary's valid claim arising from the same transaction [was] barred by limitations,"[5] but rather, brought a defensive suit invited by CLS's own wrongful conduct in attempting to foreclose on a time-barred, void lien. ECF 23 at 5-7,10.  HPI also disagrees that CLS's counterclaims arise out of the same transaction or occurrence as HPI's claims.  ECF 23 at 11-12.

---

[4] CLS's Motion for Summary Judgment does not separately address the statute of limitations regarding its breach of contract action but argues that § 16.069 applies to revive or extend the statute with respect to all of its counterclaims.  ECF 16.
[5] *Ball,* 2003 WL 21467219, at *2.

**1.  The requirements of §16.069(a) and (b) are satisfied in this case.**

First, HPI does not dispute that CLS timely asserted its Counterclaim no later than the 30th day after the date on which its answer was due.  Thus, the requirement in § 16.069(b) is met in this case.

With respect to whether the requirement of § 16.069(a) is satisfied, the Parties disagree. Texas applies a "logical relationship" test to determine whether a counterclaim arises out of the "same transaction or occurrence" as the original claim. *Smith v. Ferguson*, 160 S.W.3d 115, 120 (Tex. App.—Dallas 2005, pet. denied); *T&C Constr., Ltd. v. Brown Mech. Servs., Inc.*, No. 01-19-00041-CV, 2020 WL 3866659, at *5 (Tex. App.—Houston [1[st] Dist.] July 9, 2020, no pet.).  A logical relationship exists when "[t]he essential facts on which the counterclaim is based [are] significantly and logically relevant to both claims."  *Id.*  Under the logical relationship test, "a 'transaction' is flexible and may constitute a series of many occurrences." *Rahlek, Ltd. v. Wells*, 587 S.W.3d 57, 74 (Tex. App.—Eastland 2019, no pet.).

Inspection of the parties' operative pleadings in this case leads the Court to conclude that the requirement in § 16.069(a) is met.  The factual allegations underlying HPI's suit are that the Loan became fully payable in February 2014, no payments were made at that time or at any time thereafter, and CLS did not pursue foreclosure or collection until over 9 years later.  ECF 1-18, ¶ 11.  CLS's claims for

foreclosure and to recover amounts due on the Note are based on the factual allegations that HPI entered a Note and Deed of Trust (collectively, the Loan) in January 2004, the Loan matured in February 2014, and HPI defaulted on its payment obligations. ECF 5 ¶¶ 5-15. Certainly, "the essential facts" necessary to the parties' claims overlap. The Court concludes that CLS's counterclaims are logically related to HPI's suit claim for declaratory judgment that CLS is not entitled to foreclose on the property or collect on the Note. *See Rodriguez v. CitiMortgage, Inc.*, No. 5-14-CV-380 RP, 2015 WL 12552026, at *4 (W.D. Tex. Feb. 4, 2015) (holding that defendant's counterclaims for foreclosure and breach of contract were logically related to plaintiff's claim that defendant's attempt to collect the note and foreclose were time-barred); *Martinez v. Wells Fargo Bank, N.A. as Tr. for Park Place Sec., Inc., Asset-Backed Pass-Through Certificates Series 2004-MCW1*, No. 7:20-CV-104, 2021 WL 2764857, at *4 (S.D. Tex. Apr. 15, 2021) (holding that counterclaims for breach of a loan agreement and foreclosure arose out of the same transaction or occurrence as plaintiffs' action to block defendant's right to foreclose as time-barred).

**2. Section 16.069 applies because HPI seeks affirmative relief in addition to a declaration that actions to foreclose and collect on the Note are time-barred.**

HPI argues that § 16.069 does not apply to revive the statute of limitations on Defendant's counterclaim where, as here, Defendant "invited [Plaintiff's] suit because of its own wrongful conduct[.]" ECF 23 at 6.   Alternatively, HPI argues that § 16.069 does not apply because Defendant did not have a "valid" claim at the time HPI filed its lawsuit.  ECF 23 at 7.

"Courts have interpreted section 16.069 as permitting a party's otherwise time-barred counterclaims or cross claims only when the opposing party has sought 'affirmative relief,' rather than just a declaration on a dispute between the parties." *Holman St. Baptist Church v. Jefferson*, 317 S.W.3d 540, 545 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citations omitted).   In *Holman*, the Houston Fourteenth Court of Appeals illustrated this limitation on § 16.069 explaining that:

> if a plaintiff files an action seeking only a declaration that the defendant would be barred by a statute of limitations if it chose to bring a particular cause of action, the defendant could not use section 16.069 to then bring the otherwise time-barred cause of action.

*Id*. (citing *Ball v. SBC Commc'ns, Inc.,* No. 04-02-00702-CV, 2003 WL 21467219, at *1 (Tex. App.—San Antonio June 25, 2003, pet. denied)).   Accordingly, Texas courts apply §16.069 to allow an otherwise time barred counterclaim only in cases in which the plaintiff seeks some sort of affirmative relief and not just a declaratory judgment on a dispute between the parties.  *Id*. at 545-546 (finding that "mere

seeking of a declaration on limitations" would not trigger §16.069, but request for return of collateral did); *Swoboda v. Ocwen Loan Servicing, LLC*, 579 S.W.3d 628, 637 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (recognizing § 16.069 "permits a defendant to bring an otherwise time-barred counterclaim, except for when the plaintiff has sought a declaration on the statute of limitations itself.").

CLS argues that in addition to seeking declaratory relief on the issue of limitations, Plaintiff's suit seeks affirmative relief in the form of an injunction, damages, and attorney fees. ECF 16 at 15-16. Multiple cases from this district and others support a finding that HPI's request for attorney's fees constitutes a request for affirmative relief which allows CLS to bring otherwise time-barred counterclaims under § 16.069. *See Cross v. Bank of New York Mellon*, No. H-20-1322, 2021 WL 2581584, at *12 (S.D. Tex. June 23, 2021) (suit seeking attorney's fees in addition to declaratory judgment constituted request for affirmative relief allowing application of § 16.069); *see also Martinez*, 2021 WL 2764857, at *4 (suit seeking declaratory judgment that note was improperly conveyed and right to foreclose was waived, in addition to attorney's fees was "sufficiently affirmative" to allow application of § 16.069); *Havins v. Citimortgage, Inc*., 2016 WL 6304809 at *3 (N.D. Tex. Feb. 17, 2016) (identifying "forgiveness of the debt, attorney's fees, and costs" as affirmative claims allowing for application of § 16.069); *ECC Parkway*

*Joint Venture v. Baldwin*, 765 S.W.2d 504, 514 (Tex. App.—Dallas 1989, writ denied) (finding that "[a] claim for attorney's fees is a claim for affirmative relief"). In addition, HPI's request for a declaration that CLS "no longer has any legal right to collect the void and time-barred debt at issue in this case" (ECF 1-18, ¶ 21) is similar to the request for declaratory relief in *Martinez* that the court found sufficiently affirmative to permit § 16.069 to revive time-barred counterclaims. *Martinez*, 2021 WL 2764857 at *4 ("Although . . . pleaded as requests for declaratory relief, the Court agrees with Defendant that the relief requested would effectively allow Plaintiffs to recoup the unpaid principal and interest otherwise owed to Defendant under the loan.").

The Court maintains significant doubt about whether application of § 16.069 in this case furthers the purpose of the statute. However, the case law addressing § 16.069 in similar contexts demonstrates that courts apply § 16.069 when the party seeking the statute of limitations declaration also seeks some form of affirmative relief, including attorney's fees. Furthermore, the parties have not identified, and the Court has not found, authority expressly stating that application of § 16.069 is discretionary if the requirements of the statute are otherwise met. The case that comes closest to standing for the proposition that the application of § 16.069 is discretionary is *Ball,* 2003 WL 21467219 at *2-5 (analyzing purpose of § 16.069 and declining to apply it under the circumstances of the case). However, *Ball* was

decided before *Holman*, and did not address the issue of requests for affirmative

relief, which other courts have interpreted as a basis to apply § 16.069. Because the

Court finds that HPI sought affirmative relief in the form of attorney's fees and

damages, it will apply § 16.069 to revive or extend the statutes of limitation on CLS's

counterclaims for foreclosure and breach of contract.

### C. HPI is entitled to summary judgment denying CLS's right to foreclose on the Property because while § 16.069 removes the statute of limitations bar, it cannot revive a void lien.

As stated earlier, Texas Civil Practice and Remedies Code § 16.035 provides

a four year statute of limitations for foreclosure on real property. TEX. CIV. PRAC.

& REM. CODE § 16.035(a). In addition to setting forth the statute of limitation for

foreclosure, the Texas statute also provides that "[o]n the expiration of the four-year

limitations period, the real property lien and a power of sale to enforce the lien

become void." TEX. CIV. PRAC. & REM. CODE § 16.035(d). As one federal district

court has noted:

> While Tex. Civ. Prac. & Rem. Code § 16.035(d) is often referred to as
> a statute of limitations, it is not merely a statute of limitations that is a
> procedural bar to suit. Rather, the language of section 16.035 voids a
> lien upon the failure to bring suit or force a sale within four years of
> accelerating the lien. But section 16.069 makes no mention of liens or
> foreclosure, and there is no support for [the defendant's] assertion that
> section 16.069 serves to revive a lien.

*Bitterroot Holdings, LLC v. Bank of New York Mellon*, No. 14-CV-804 (RCL), 2017

WL 10181041, at *11 (W.D. Tex. Aug. 4, 2017). The Texas Supreme Court has

also recognized that under 16.035(d) "the real-property lien and the power of sale to enforce the lien become void" when the 4-year period expires. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001).

In *Bitterroot* the federal district court expressly rejected defendant BONY's "peculiar assertion" that § 16.069 could preserve BONY's ability to foreclose on a lien more than four years after the right to foreclose accrued, stating emphatically:

> A void lien is forever void. It is no more. It has ceased to be. Assuming Bitterroot's 2009–2013 timeline is correct, BONY's lien is bereft of life, and section 16.069 cannot raise it from the dead. A party cannot fail to foreclose on a lien, lose the lien, and then revive the lien by filing a counterclaim in a trespass to try title lawsuit. Such an interpretation of the effect of section 16.069 would allow virtually any party to revive a void lien, wreaking havoc on foreclosure proceedings throughout the State of Texas. There is no support for such an interpretation.

*Id.* at *12.

CLS cites two cases from the Southern District of Texas in which, according to CLS, the district courts applied § 16.069 to revive a defendant's right of foreclosure: *Cross v. Bank of New York Mellon*, No. H-20-1322, 2021 WL 2581584, at *7 (S.D. Tex. June 23, 2021) and *Martinez v. Wells Fargo Bank, N.A. as Tr. for Park Place Sec., Inc., Asset-Backed Pass-Through Certificates Series 2004-MCW1*, No. 7:20-CV-104, 2021 WL 2764857, at *1 (S.D. Tex. Apr. 15, 2021). As explained below, the Court finds that neither case involved circumstances like this case and neither case held that a lien void pursuant to § 16.035(d) could be revived by § 16.069.

In *Cross*, the court's primary holding was that defendant BONYM's counterclaim for foreclosure *was not time-barred* because the four-year statute of limitations was tolled during the periods BONYM was enjoined from pursuing foreclosure and then reset when the acceleration of the loan was abandoned.  2021 WL 2581584, at *6-7.  Only in the alternative did the *Cross* court find that § 16.069 would allow BONYM to proceed on its counterclaims, including for foreclosure.  *Id.* at *11-12.   In *Cross*, the court did not hold expressly that § 16.069 revives a lien that has been rendered void by § 16.035(d).  Furthermore, the district court's ruling in *Cross* that BONYM's right to foreclose was not time barred was affirmed by the Fifth Circuit.  *Cross v. Bank of New York Mellon as Trustee for Certificate Holders of CWALT, Inc., Alternative Loan Trust 2004-30CB*, 2022 WL 1056093, at *1-2 (5th Cir. 2022) ("The district court also correctly found that '[noteholder] effectively decelerated Cross's loan… thus resetting the clock on limitations before they ran….") (cleaned up)).  The Fifth Circuit's opinion does not address whether § 16.069 operates to revive a lien that, under Texas law, was rendered void before any attempt was made to foreclose.  In addition, the facts in *Cross* were materially different from the facts in this case.  BONYM acquired the deed of trust at issue in *Cross* before the statute of limitations for foreclosure expired.  BONYM then diligently pursued its remedies but was prevented by plaintiff's use of litigation and TROs from exercising the right of judicial foreclosure while the lien was still valid.

*Id.* at \*10.  In this case, CLS did not acquire the Deed of Trust until after lien was rendered void under 16.035(d) and no attempt to foreclose was ever made prior to the lien becoming void.

The facts in *Martinez v. Wells Fargo Bank, N.A. as Tr. for Park Place Sec., Inc., Asset-Backed Pass-Through Certificates Series 2004-MCW1*, No. 7:20-CV-104, 2021 WL 2764857, at \*1 (S.D. Tex. Apr. 15, 2021) are also materially different from the facts in this case.  In *Martinez*, the plaintiffs filed a declaratory judgment action in 2016, asserting that defendant waived the right to accelerate by accepting untimely payments and that the note and deed of trust had not been properly conveyed to defendant.  *Id.*  But, plaintiffs failed to serve defendant with the suit until almost four years after it was filed.  *Id.*  Once served, the defendant bank asserted counterclaims for foreclosure and breach of the note and later moved for summary judgment on those counterclaims.  In response to defendant's motion for summary judgment on the foreclosure and breach of note counterclaims, the plaintiffs failed to establish a statute of limitations defense because they failed to identify a date on which the loan was accelerated, arguing it must have been accelerated sometime between 2013 and 2014, a fact the defendant disputed.  In the absence of a specific date on which the loan was accelerated and the statute of limitations began to run, *the court made no finding that the lien had expired*, but

instead simply *assumed* that limitations barred the defendant bank's counterclaims.[6]

In addition, the court's opinion in *Martinez* never mentions § 16.035(d) or the fact

that it renders the lien void if foreclosure does not occur within four years of the

accrual of the cause of action. Rather, the *Martinez* court addressed only the

*possibility* that the action for foreclosure was barred by limitations when holding

that § 16.069 operated to save the counterclaims because plaintiffs' failure to serve

the defendant with suit for over four years prevented defendant from timely asserting

them.  Specifically, the *Martinez* court found:

> [a]lthough Plaintiffs may have filed their action before any such time-
> bar, by waiting to serve Defendant while limitations ran is consistent
> with this purpose.  *Assuming* that Defendant's counterclaims are barred
> by limitations, § 16.069 revives them and summary judgment must be
> granted.

2021 WL 2764857 at *4 (emphasis added).

Here, there is no factual dispute as to when a claim for judicial foreclosure

accrued—it accrued on February 1, 2014, the maturity date of the note.  Here, it is

undeniable that the statute of limitations expired four years after February 1, 2014,

whereas the *Cross* court found that the statute of limitations had not expired and the

*Martinez* court could not, on the record before it, find that it had.  Neither *Cross* nor

*Martinez* involved a situation like this one, in which the lien created by the Deed of

---

[6] In fact, in the absence of an acceleration, the statute of limitations would not have started to run until the loan maturity date of August 1, 2019, approximately four months *after* defendant filed its counterclaims.

Trust was void under § 16.035(d) long before CLS acquired it in December 2022. Here, CLS's delay in filing foreclosure proceedings is not attributable to HPI's conduct.  Thus, in light of the plain language of § 16.035(d) and the clarity of the record demonstrating the date the cause of action for foreclosure accrued, the Court does not find *Cross* or *Martinez* to be persuasive authority for revival of a void lien through the application of § 16.069.

"It is perhaps unnecessary to state that the relevant lien must be valid in order to effectuate a judicial foreclosure proceeding or that a void lien may not be judicially foreclosed upon." *Bitterroot*, at *11.  Thus, even though the Court applies § 16.069 to allow CLS to pursue its counterclaims, CLS cannot foreclose on a void lien.  Therefore, HPI is entitled to summary judgment on CLS's counterclaim for foreclosure.

### D. Fact issues prevent summary judgment on CLS's counterclaim for breach of the Note.

CLS seeks summary judgment on its breach of contract claim "to recover all amounts due and owning under the Loan, as well as all attorney's fees and expenses incurred in enforcing the Loan, and to specifically enforce its right to foreclose the Deed of Trust and sell the Property in satisfaction of the judgment."  ECF 16 at 23. As set forth above in Section IV.C, the Court concludes that CLS is not entitled to foreclose on a void lien and recommends granting HPI's motion for declaratory judgment on that issue and denying CLS's motion for foreclosure.  The Court

addresses in this subsection whether CLS is entitled to summary judgment on its remaining claims relating to breach of the Note.

HPI makes the following arguments in opposition to CLS's Motion for Summary Judgment on its breach of contract counterclaim: the breach of contract counterclaim is untimely and not saved by §16.069; CLS lacks standing because BFTG did not assign the Note to CLS; CLS has no damages; and fact issues on HPI's affirmative defenses preclude summary judgment. *See* ECF 23.

### 1. CLS's breach of the Note claim is not time-barred.

The Court has concluded, as discussed in Section IV.B, that § 16.069 applies to revive the statutes of limitations on CLS's counterclaims. No Texas statute cancels or voids a promissory note once limitations expire the way § 16.035(d) voids a lien after the statute of limitations expires. Therefore, CLS is entitled to a summary judgment ruling that, because §16.069 applies to extend the statute of limitations on its counterclaims, its breach of contract counterclaim is not time-barred. HPI's remaining arguments are discussed below.

### 2. Whether CLS maintains standing as assignee of the Note presents a disputed issue of fact.

HPI characterizes its argument regarding assignment of the note as one of standing. In the oft-cited case of *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992), the Supreme Court held that in order to meet the "irreducible constitutional minimum of standing," a plaintiff must show (1) an injury in fact that is concrete

22

and particularized and actual or imminent; (2) a causal connection between plaintiff's injury and defendant's conduct; and (3) the injury will be "redressed by a favorable decision."  HPI argues that CLS has no injury in fact because BFTG assigned only a "Deed of Trust, Assignment of Rents and Fixture" to CLS, not HPI's "Note/Debt," and therefore CLS "has sustained no damages at all."  ECF 35 at 8.

The record shows that on January 14, 2004, HPI signed a Note in the amount of $500,000 payable to Southwest Guaranty, Ltd.  ECF 16-2; ECF 13-6 at 2.  On the same date, HPI signed a "Mortgage, Deed of Trust, Security Agreement And Assignment of Leases," which was filed in the real property records of Harris County, Texas as Document X347226.  ECF 16-3; ECF 13-5.  The "Mortgage, Deed of Trust, Security Agreement and Assignment of Leases" expressly granted Southwest Guaranty the right of foreclosure and power of sale.  16-3 at 16-17.  On February 18, 2004, Southwest Guaranty, Ltd. signed a document titled "Assignment of Mortgage, Deed of Trust, Security Agreement and Assignment of Leases," that expressly assigned to BFTG "the Note, together with (i) all liens, and any superior title, held by the undersigned securing the payment thereof, and (ii) the other loan documents executed in connection with such indebtedness."  ECF 16-4.  Therefore, it is established on the record that prior to December 22, 2022, BFTG was the holder of the Note and the Deed of Trust.

On December 22, 2022, BFTG executed an "Assignment of Deed of Trust" assigning to CLS "that certain Deed of Trust, Assignment of Rents and Fixture Filing executed by HOUSTON PRIME INVESTMENTS, LTD., A TEXAS LIMITED PARTNERSHIP, dated January 14, 2004 and recorded in the office of the County Clerk under Document X347226, of the Official Public Records of Real Property of HARRIS County, Texas."  ECF 16-4 at 5. Although the Assignment omits the word "mortgage," Document X347226 is the "Mortgage, Deed of Trust, Security Agreement and Assignment of Leases" executed by HPI on January 14, 2004.  ECF 37 at 7 (citing ECF 16-3).  Because the Assignment does not reference the Note or the debt specifically, HPI contends the "Note/Debt" is still held by BFTG.  ECF 35 at 8.

The evidence in the record unequivocally demonstrates that BFTG assigned the Deed of Trust to CLS in December 2022.  However, the record is equivocal as to effective assignment of the Note.  CLS suggests that the Note was endorsed in blank, making it payable to the bearer.  ECF 25 at 9; *see Kafi, Inc. v. Wells Fargo Bank, N.A.*, No. 3:20-CV-00354, 2024 WL 23171, at *3 (S.D. Tex. Jan. 2, 2024) (defining a "blank endorsement" and explaining that "[w]hen indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." (citations omitted)) (objections pending). But the Note contained in the summary judgment record does not appear to be

24

endorsed in blank; it is endorsed as payable to Southwest Guaranty and/or Wachovia Bank, N.A. as Indenture Trustee for Bayview.  ECF 16-2.  CLS's Senior Vice President, Kevin Jonas attests by Declaration that "on December 22, 2022, BFTG assigned the Deed of Trust" to CLS.  ECF 16-1, ¶ 5.  The Jonas Declaration does not mention assignment of the Note.  The Declaration later states that CLS "is the current servicer of the Loan and owner/holder of the Note and Deed of Trust."  *Id.* ¶ 6.  CLS argues in its Motion that "the competent summary judgment evidence establishes that [CLS] is the owner and holder of the Note and Deed of Trust," but does not follow that statement with a citation to record evidence.  ECF 25 at 8.

CLS contends that the transfer of the Deed of Trust necessarily transferred the debt.  ECF 25 at 9.  In support, CLS sites cases noting that Texas law follows the maxim that "the mortgage follows the note" and argues that assignment of the Deed of Trust also assigns the right to foreclose upon default on the debt.  *Id.* (citing, e.g., *DeFranceschi v. Wells Fargo Bank*, N.A., 837 F. Supp. 2d 616, 622 (N.D. Tex. 2011)).  The Court agrees that assignment of the Note is immaterial to CLS's foreclosure claim because the Deed of Trust includes the power of sale and Texas law does not require that CLS hold the Note in order to foreclose.  *See* ECF 25 at 8-9 (citing cases holding that that the "show-me-the-note" theory has been rejected as a defense to foreclosure); *see also Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253-54 (5th Cir. 2013) (holding that Texas law does not require production

of the original note with a "wet ink" signature).  However, CLS's argument misses the finer point of whether CLS has standing to sue for breach of contract to recover amounts due under the Note.

"Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *DeFranceschi*, 837 F. Supp. 2d at 623; *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011) (holding that "[f]oreclosure enforces the deed of trust, not the underlying note," and therefore they may be enforced separately); *see also Aguero v. Ramirez*, 70 S.W.3d 372, 375 (Tex. App.—Corpus Christi-Edinburg 2002, pet. denied) (holding that plaintiff's suit to enforce the promissory note, remained actionable despite expiration of the 4-year statute of limitations for foreclosure).  To enforce a right to payments under a Note, a plaintiff must prove: (1) the existence of a note; (2) the note was executed by defendant; (3) plaintiff is the owner or holder of the note; and (4) the balance due and owing.  *Thompson v. Yellowfin Loan Servicing Corp.*, No. 01-21-00147-CV, 2023 WL 17492, at *7 (Tex. App.—Houston [1st Dist.] Jan. 3, 2023, no pet.).  Regardless of whether HPI or CLS is the movant, the summary judgment record is unclear as to whether the Note was indorsed in blank or effectively assigned to CLS, preventing summary judgment in favor of either party.

In addition to the issue of standing, HPI argues that CLS's damages, if any, were not caused by HPI's failure to make payments on the Note, but by CLS's purchase of a void lien, and that fact issues exist on its affirmative defenses of waiver, laches, failure of a material term, CLS's prior breach, CLS's fraud, CLS's unlawful debt collection practices, and CLS's failure to mitigate. ECF 23 at 15-21. Neither HPI nor CLS moved for summary judgment on HPI's affirmative defenses. *See* ECF 13; ECF 16. But the record demonstrates an unanswered question of fact regarding the amount due on the Note. *Compare* ECF 16-5 at 2 *with* ECF 13-8 at 2. For these additional reasons, the cross-motions for summary judgment on CLS's breach of contract claim for enforcement of the Note should be denied.

### E. Fact Issues Preclude Summary Judgment on Equitable subrogation.

Equitable subrogation is a theory under which a party that discharges a debt on behalf of another will step into the shoes of the original creditor without the need of a new agreement. *PNC Mortg. v. Howard*, 668 S.W.3d 644, 647 (Tex. 2023) (subrogation simply means that one person will be allowed to stand in the shoes of another). The two key elements of equitable subrogation are (1) the person whose debt was paid was primarily liable on the debt; and (2) the claimant paid the debt involuntarily. *Murray v. Cadle Co*., 257 S.W.3d 291, 299 (Tex. App.—Dallas 2008, no pet.); *Worley v. Avinger*, No. 05-18-00648-CV, 2019 WL 3729508, at *3 (Tex.

App. Aug. 8, 2019).  The general purpose of equitable subrogation is to prevent unjust enrichment of the debtor.  *Murray*, 257 S.W.3d at 299.

Kevin Jonas attests that "[t]o date, [CLS] has paid an amount no less than $59,179.68 in insurance premiums for the Property and an amount no less than $168,668.66 in property taxes to protect its interest in the Property."[7]  ECF 16-1 ¶ 8.  CLS alleges that it is entitled to an equitable lien on the Property in the amount it was forced to pay to release tax liens and for insurance, plus interest.  ECF 5, ¶¶ 29-33.

The Court recommends that summary judgment be denied on CLS's equitable subrogation claim.  The record fails to demonstrate the month and year in which the referenced tax and insurance payments were made.  The lien created by the Deed of Trust has been void since February 2018.  Therefore, neither CLS nor its assignors held a valid lien on the Property after February 1, 2018.  Any taxes and insurance payments made by CLS or its assignors after February 1, 2018 were not paid involuntarily to preserve an interest in the Property.  CLS has not met its burden to prove it is entitled to equitable subrogation as a matter of law on all taxes and insurance paid since 2014.

---

[7] The Court notes that CLS has presented no evidence to prove HPI was primarily liable for the amounts it paid.  HPI has admitted that "no payments were made on [the] Loan for over 9+ years," but CLS extrapolates that HPI's admission "includes payments for taxes on the Property."  ECF 16 at 28.  The CLS has not submitted any tax or insurance invoices or receipts.

## V.    Conclusion and Recommendation

For the reasons discussed above, the Court RECOMMENDS that HPI's Motion for Summary Judgment (ECF 13) and CLS's Motion for Summary Judgment (ECF 16) be GRANTED IN PART AND DENIED IN PART.  Specifically, the Court RECOMMENDS that HPI be granted a declaratory judgment and a permanent injunction preventing CLS from foreclosing on the Property.  The Court further RECOMMENDS that CLS's counterclaims for breach of contract to enforce the Note and for equitable subrogation be found timely and remain pending for trial. Further, the Court RECOMMENDS that the parties' claims for attorney's fees be deferred pending further proceedings.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on February 15, 2024, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge